547 F.2d 208
 In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.
Appeal of CITY OF NEW YORK, in No. 76-1083.
Appeal of TRAVE LODGE INTERNATIONAL, INC., in No. 76-1122.
 Nos. 76-1083, 76-1122.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 11, 1976.
Decided Dec. 28, 1976.
 
 W. Bernard Richland, Corp. Counsel, New York City, for appellant, City of New York; Stanley Buchsbaum, Edith I. Spivack, Cornelius F. Roche, New York City, of counsel.
 Terrence M. Quirin, Philadelphia, Pa., for appellee, Trustees of Penn Cent. Transp. Co.
 Carl Helmetag, Jr., Philadelphia, Pa., Gen. Counsel for appellee, Penn Cent. Transp. Co.
 Hughes Hubbard & Reed, New York City, for appellant, TraveLodge Intern., Inc.; Kalman A. Oravetz, William M. Barron, New York City, of counsel.
 Demov, Morris, Levin & Shein, New York City, for Washington Federal Sav. and Loan Ass'n; Irving Bizar, Robert S. Ordman, of counsel.
 OPINION OF THE COURT
 Before ADAMS and WEIS, Circuit Judges, and GERRY, District Judge.*
 ADAMS, Circuit Judge.
 
 
 1
 The basic conflict in these appeals is between two financially troubled entities: the trustees of the Penn Central Transportation Company[1] and the City of New York. Specifically, we are called upon to review Order No. 2091 of the Penn Central Reorganization Court, in which the district court (1) enjoined the City of New York from proceeding with an in rem action to foreclose a tax lien against property leased by TraveLodge International, Inc. from Despatch Shops, Inc., a wholly owned subsidiary of Penn Central; and (2) ordered the Washington Federal Savings and Loan Association to transmit to Penn Central certain monies that TraveLodge had paid into an escrow account controlled by the Association.
 
 
 2
 * TraveLodge leases from Despatch two parcels of land located in Manhattan. Under section 4.02 of the applicable lease, TraveLodge is required to pay to the landlord a basic rent as well as an "additional rent" equal to eighty per cent of taxes on the unimproved land and one hundred per cent of taxes on all improvements. Thus, the responsibility for the payment of the bulk of the real estate taxes imposed on the two properties is borne by TraveLodge.
 
 
 3
 These two parcels are also subject to a blanket lease between Despatch and Penn Central.[2] Penn Central's rights under the blanket lease go beyond those ordinarily enjoyed by a lessee: it receives all rents and income derived from the Despatch properties; it has the right to purchase any of them at cost; and in the event Despatch would sell any of the properties subject to the blanket lease, Penn Central would receive the proceeds. In apparent recognition of Penn Central's dominant position with relation to the parcels that are the subject of this action, TraveLodge has always looked to Penn Central as its landlord, and has paid to it all the basic rentals and the additional rentals as well. Moreover, before the commencement of the reorganization proceedings, it was Penn Central, not Despatch, that forwarded the "additional rent" payments to New York.
 
 
 4
 Since June 1970, TraveLodge has paid approximately $900,000 in "additional rent" to Penn Central. It has also delivered about $125,000 in real estate taxes to Washington Federal, which holds a mortgage on TraveLodge's leasehold; this sum was to be kept in escrow. Penn Central has failed to transmit to New York any of the money received from TraveLodge prior to March, 1975, and New York claims that more than $1,200,000 in back taxes and interest is owed on the two parcels. As a result, a tax lien on the two lots has arisen by operation of law.[3]
 
 
 5
 In August 1975, New York commenced an in rem action to foreclose the lien for the unpaid taxes and interest. In response, TraveLodge petitioned the Reorganization Court for an order requiring New York to withdraw its in rem action; directing Penn Central to pay the outstanding real estate taxes and interest; and instructing Penn Central to pay future real estate taxes or authorizing TraveLodge to pay these taxes and offset such sums against future rent.[4]
 
 
 6
 The Reorganization Court issued an order, on November 20, 1975, enjoining New York from continuing its attempts to foreclose the tax lien, directing Washington Federal to pay to Penn Central the monies contained in the TraveLodge escrow account, and denying TraveLodge's request that Penn Central be ordered to pay the accrued taxes and interest or to permit it to pay future taxes directly to New York. Both New York and TraveLodge have appealed to this Court for review of Order No. 2091. We affirm, with the clarifications set forth in this opinion. Our disposition, however, is without prejudice to the rights of New York and TraveLodge to commence future proceedings, consistent with the guidelines contained herein.
 
 II
 
 7
 Paragraph 9 of Order No. 1 of the Reorganization Court prohibits all persons from interfering in any way with property possessed by Penn Central as owner, lessee or otherwise. In addition, Order No. 70 authorizes Penn Central to defer payment of certain taxes, including local real estate taxes.
 
 
 8
 New York urges that its foreclosure action does not violate Order No. 1 or Order No. 70, and tenders two arguments in support of its position. First, it asserts that the fact that the properties involved in this action are owned by Despatch, rather than by Penn Central, is of legal significance. Although Despatch is a wholly-owned subsidiary of Penn Central, New York asserts, it is not in reorganization and, therefore, not within the jurisdiction of the Reorganization Court. Thus, the City concludes, District Judge Fullam was without jurisdiction to enjoin New York's foreclosure action against Despatch. In advancing this contention, New York relies upon In re Beck Industries, Inc.,[5] in which the Second Circuit held that a bankruptcy court does not have jurisdiction over the property of a subsidiary of a debtor corporation.
 
 
 9
 New York's second set of arguments revolve around the proposition that Penn Central does not truly have a lease on the two implicated parcels. It claims, for example, that the trustees of the Penn Central estate never explicitly adopted the blanket lease, that the two lots were not covered by the lease, and that the lease was not recorded.
 
 
 10
 Penn Central, in reply, contends that it has a sufficient property interest in the two parcels to support the jurisdiction of the Reorganization Court. It maintains that the TraveLodge parcels were specifically included under the blanket lease and that the non-recordation of that lease is irrelevant. Moreover, it asserts that the properties were purchased at the direction of Penn Central, with Penn Central funds. Finally, Penn Central suggests that the conduct of the parties throughout the existence of the TraveLodge-Despatch lease indicates that Despatch was, in effect, holding title as an agent for Penn Central.
 
 
 11
 Even if we were to assume that Despatch did not hold title as an agent for Penn Central, we conclude that the district court was correct in asserting jurisdiction over the two properties. The record indicates that the two parcels in question were included in the blanket lease by certificates of inclusion dated January 15, 1930 and October 9, 1931. This leasehold is a sufficient interest in property on the part of Penn Central to support the action of the Reorganization Court. The cases hold that leasehold estates are included in the property of a debtor that is subject to the jurisdiction of a bankruptcy court.[6] And Penn Central's interest in the two parcels in controversy surpasses that of the ordinary lessee. Finally, it is noted that among the activities that are restrained by Order No. 1 is interference with leasehold estates held by Penn Central. We thus hold that the trial court was within its jurisdiction, and did not abuse its discretion, in enjoining New York's foreclosure action.
 
 III
 
 12
 In examining the issue whether the district court abused its discretion in refusing to order Penn Central to pay the outstanding real estate taxes and interest or to authorize TraveLodge to pay future taxes directly to New York, there is a preliminary consideration that must be initially addressed. Section 605 of the Regional Rail Reorganization Act Amendments of 1975[7] requires that the estates of debtor railroads transmit to appropriate taxing districts all tax payments collected from lessees for the period subsequent to March 1, 1975. Penn Central has informed us, and such declaration is not controverted, that it is now complying with the statutory directive. Therefore, TraveLodge's prayer to be allowed to pay future taxes to New York has become moot, and the proper bounds of Judge Fullam's order must be construed to include only the taxes and interest due for the period prior to March 1, 1975. A live case or controversy, nonetheless, still exists as to the sums due for this earlier period, since section 605 does not require railroads to pay to taxing districts monies collected prior to March 1, 1975.[8]
 
 
 13
 The beginning point for our analysis is Order No. 70 of the Reorganization Court which authorized deferral of tax payments by Penn Central and enjoined governmental units from taking any action to collect these taxes. The apparent rationale for such order was that the public interest in assuring continued railroad operations outweighed the need of taxing units for immediate payment of accrued taxes.
 
 
 14
 This Court affirmed Order No. 70.[9] In doing so, however, we emphasized that we were approving only a temporary deferral of tax payments and noted the duty of the courts constantly to reassess the relative strength of the competing interests, including the financial circumstances of the various taxing authorities.[10]
 
 
 15
 Since Order No. 2091 is a progeny of Order No. 70, this Court's prior opinion mandates a reassessment of the temporary balance struck at that time. Certainly, the relative needs of the competing parties have been radically altered in the interim. Penn Central no longer operates railroads, diminishing or perhaps eliminating its justification for continuing to withhold taxes, whereas the grave financial difficulties of New York makes its demand for immediate payment more compelling.
 
 
 16
 Despite these weighty considerations, other factors convince us that the action of the Reorganization Court did not constitute an abuse of discretion. Many taxing authorities have outstanding claims against Penn Central for the pre-March 1, 1975 period. Moreover, counsel informed us at oral argument that the presentation of a plan of reorganization, which will include a comprehensive arrangement for settlement of all tax liabilities, was imminent. We have since learned that a plan of reorganization has, indeed, been filed in the district court. In light of these considerations, it would appear to be inadvisable, at this time, to select a single municipality, albeit a most important one, for immediate satisfaction of a portion of its claim against Penn Central.
 
 
 17
 We stress, however, that we are approving, at this time, only a temporary delay of Penn Central's resolution of the claims of New York and other, similarly-situated, taxing authorities. Given the legitimate interests of New York and TraveLodge, the inability or failure of Penn Central to consummate a plan of reorganization within a reasonable period of time could possibly alter the balance anew. Our disposition of these appeals is therefore without prejudice to the rights of New York and TraveLodge to institute further proceedings if a plan of reorganization has not been consummated within six months of the entry of the judgment in this appeal.
 
 IV
 
 18
 The order of the Reorganization Court will be affirmed, but the disposition will be without prejudice to the rights of New York and TraveLodge to commence further proceedings if a plan of reorganization has not been consummated within six months of the entry of judgment in this appeal.
 
 
 19
 Each party will bear its own costs.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 We will refer to the Trustees of the Penn Central Transportation Company as "Penn Central" throughout the opinion
 
 
 [2]
 The blanket lease was originally entered into by predecessors in interest of the current parties. Only the present parties will be referred to in this opinion
 
 
 [3]
 New York City Administrative Code § 415(1)-7.0
 
 
 [4]
 Under section 4.10 of its lease with Despatch, TraveLodge has the right to pay real estate taxes directly to New York if Despatch fails to do so. Thus, TraveLodge was seeking an order that would effectuate this right
 Washington Federal also filed a petition with the Reorganization Court seeking relief similar to that requested by TraveLodge, including the right to pay the monies in the TraveLodge escrow account directly to New York.
 
 
 [5]
 479 F.2d 410 (2d Cir. 1973)
 
 
 [6]
 See, e. g., Callaway v. Benton, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949)
 
 
 [7]
 45 U.S.C. § 794
 
 
 [8]
 See In re Penn Central Transp. Co., 402 F.Supp. 106 (E.D.Pa.1975), aff'd without opinion, 538 F.2d 320 (3d Cir. 1976)
 
 
 [9]
 In re Penn Central Transp. Co., 452 F.2d 1107 (3d Cir. 1971)
 
 
 [10]
 The language of the relevant portion of our opinion is as follows:
 We do have some reservations concerning the failure of the reorganization court to specify a date in its order for a hearing to review the propriety of continuing to enjoin the payment or collection of the specified tax assessments. However, the record evidences an awareness by the court of its duty to reassess continually the progress of the reorganization in light of the financial circumstances of the various taxing entities here represented and to terminate the injunctions at the earliest feasible date.
 452 F.2d at 1109.